# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **RONDA KLASSEN,** *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**SOLIDQUOTE LLC** and **DIGITAL MEDIA SOLUTIONS, LLC f/k/a UNDERGROUND ELEPHANT**<br><br>Defendants. | CLASS-ACTION<br><br>Case No..: 1:23-cv-00318-GPG-NRN |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE DISCOVERY

AND NOW, Plaintiff, Ronda Klassen ("Klassen" or "Plaintiff"), individually and on behalf of others similarly situated, files her response in opposition to the Motion to Bifurcate Discovery filed by Defendants SolidQuote, LLC ("SolidQuote") and Digital Media Solutions, LLC ("DMS") (collectively "Defendants"). Doc. No. 36. In response to in opposition thereto, Plaintiff states as follows:

**I.     STATEMENT OF RELEVANT FACTS**

Ronda Klassen filed a putative class-action against SolidQuote on February 4, 2023 alleging violations of the Telphone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Doc. No. 1. Through the informal exchange of information with SolidQuote, she learned that DMS was the telemarketing vendor of SolidQuote identified in SolidQuote's records, to have spoken with Ronda Klassen before being transferred to SolidQuote. Accordingly, Klassen filed an Amended Complaint which named DMS as a co-Defendant to SolidQuote. Doc. No. 8. On June 14, 2023, the Parties submitted their 26(f) Report and proposed schedules, reflecting the

1

Defendants' proposal to conduct bifurcated discovery with "merits" discovery coming first followed by dispositive motions, and then "class" discovery following before a motion for class certification. Doc. No. 28. The Parties appeared before Judge Neureiter for the Rule 16 Scheduling Conference via telephone on June 20, 2023. Doc. No. 29. A Scheduling Order was entered that day, which did not provide for bifurcation of discovery. Doc. No. 30.

The Defendants now seek to modify the Scheduling Order by bifurcating discovery and forcing the Parties and the Court to stratify "class" discovery from "merits" discovery, with "merits" discovery coming first. Doc. No. 36.

## II.   ARGUMENT

### A. Standard

Federal Rule of Civil Procedure 42(b) affords the Court broad discretion to bifurcate proceedings "[f]or convenience or to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999) ("A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation."). The "decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." *True Health Chiropractic Inc v. McKesson Corp.*, No. 13-CV-02219-JST, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015).

### B. The inherent overlap in "merits" and "class" discovery in TCPA class-actions renders bifurcation imprudent.

Rule 23 requires class certification be ordered at the "earliest practicable time." Fed. R. Civ. P. 23(a)(1)(A). The Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro.

23(c)(1)(A) warn that "[a]ctive judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between [class] "certification discovery" and 'merits discovery.'" *Id.* The Fourth Edition of the Manual for Complex Litigation explains the relationship between "merits" and "class" discovery:

> There is not always a bright line between the two. Courts have recognized that information about the nature of the claims on the merits and the proof that they require is important to deciding certification. Arbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes.

Federal Judicial Center, Manual for Complex Litigation, Fourth, § 21.14 Precertification Discovery 256 (2004).

Taking their cue from the Federal Advisory Committee on Rule 23 and the Manual from Complex Litigation, courts have rejected efforts to bifurcate discovery due to the practical impossibility of classifying whether discovery is "class" or "merits." Frequently, the *Smith v. Lifevantage Corp.*, No. 2:18-cv-00621-DBB-PMW, 2020 U.S. Dist. LEXIS 68023, at *4-5 (D. Utah Apr. 15, 2020) ("class determination involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.")  For this reason, "courts are reluctant to bifurcate class-related discovery from discovery on the merits." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012); *See also Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017) (observing that bifurcation "may give rise to disputes over whether a particular discovery request relates to the merits or to class certification"); *Munoz v. PHH Corp.*, No. 1:08-CV-0759-DAD-BAM, 2016 U.S. Dist. LEXIS 17254, 2016 WL 10077139, *4 (E.D. Cal. 2016) ("Courts have repeatedly acknowledged that there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits.")

In a consumer class action relating to deceptive sales practices in a purported pyramid scheme, the District of Utah rejected the defendant's request for bifurcation noting the inherent overlap in the "predominance" inquiry for Rule 23 and the question of whether a fraudulent operation was being perpetuated:

> For the following reasons, the court finds bifurcation of discovery in this case to be inappropriate. Discovery relating to class certification is closely intertwined with merits discovery. To certify the class, Plaintiffs must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, Plaintiffs must secure evidence concerning what the class of distributors did, what representations were made to them, and how the information was disseminated. These questions overlap with questions regarding the scope and operation of the alleged pyramid scheme and fraud, such as how the scheme operated, what Defendants planned, to whom the scheme directed towards, what the Defendants knew, and when the Defendants knew it.

*Smith,* 2020 U.S. Dist. LEXIS 68023, at *5-6.

In the TCPA context, courts have routinely rejected requests for bifurcation as it is especially difficult to ascertain what is "merits" and what is "class." Noting the inherent overlap in discovery in TCPA class-actions, the Middle District of Florida rejected bifurcation noting "the issues cannot be divided into separate discovery categories". *Tillman v. Ally Financial, Inc.*, 2:16-cv-313-JES-CM, 2016 U.S. Dist. LEXIS 140950, 2016 WL 9504326, *3 (M.D. Fla. Oct. 12, 2016). See also *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 8:10-cv-2008-VMC-TGW, 2011 U.S. Dist. LEXIS 16684, 2011 WL 486123, *2 (M.D. Fla. Feb. 7, 2011) (same). In *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, 2018 WL 501413, 2018 U.S. Dist. LEXIS 2286, (C.D. Cal. Jan. 5, 2018), the Central District of California rejected a TCPA defendant's motion to bifurcate discovery in a class-action matter, concluding bifurcation would lead to inefficiencies and possible

"endless discovery disputes", as "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst." *Id.*,

In order to shed light on the inherit overlap between "class" and "merits" discovery, Plaintiff provides certain examples of issues that cannot neatly be categorized as one or the other:

1. **<u>Defendants' acquisition of leads and "consent" from vendors/lead generators</u>**

Sellers and telemarketers do not purchase one "lead" at a time of consumer data from their lead generators/data-brokers, but do so *en masse*. <u>See</u> *In re Targeting & Eliminating Unlawful Text Messages*, CG Docket No. 21-402, 2023 FCC LEXIS 788, *67 (F.C.C. March 17, 2023) (describing lead generators selling consumer data in bulk to hundreds of telemarketers at a time). Documents from a telemarketer's lead generator(s) can be dispositive when addressing a TCPA defendant's affirmative defense of "consent". Similarly, a faulty, fraudulent or deceptive lead source can end up serving as the parameters of a class or sub-class. In *Kamrava v. Cenlar Capital Corp.*, No. 2:20-CV-11465-AB (Ex), 2021 WL 10373035, 2021 U.S. Dist. LEXIS 209314, (C.D. Cal. Oct. 7, 2021), the Central District of California rejected a TCPA defendant's motion to bifurcate noting the inherent overlap in discovery necessary to ascertain whether the defendant called plaintiff (i.e. "merits" discovery) or whether the defendant called members of the putative class without consent (i.e. "class" discovery). *Id*., at 6 (noting the significant overlap in class and individual discovery as to "whether Defendant contacted Plaintiff and/or putative class members without their consent.")

The inherently class-nature of illegitimate leads is known by counsel for SolidQuote as well as anyone. In fact, he was recently forced to file an enforcement action on behalf of another client of his (Hi Q, Inc.) to a vendor of Hi Q's to obtain information as to whether Hi-Q was disclosed to consumers as an affiliate of the third-party vendor on its website after Hi-Q was sued

5

in a TCPA class-action. *See Hi Q, Inc. v. Zeetogroup, LLC,* No. 22-cv-1440-LL-DDL, 2023 WL 4096224, 2023 U.S. Dist. LEXIS 106739, at *2-3 (S.D. Cal. June 20, 2023).

Whether a lead source has obtained valid consent from a named plaintiff is often the same inquiry as to whether the lead source has obtained valid consent from a putative class or sub-class. Accordingly, Inquiries into lead sources/sources of purported "consent" are essential to both individual and class analyses.

### 2. **Whether violations are willful or merely negligent.**

Violations of section 227(c) of the TCPA provide for damages up to $500 per call, which can be trebled up to $1500 per call in the event the violations were "willful." 47 U.S.C. § 227(c)(5)(C). When making the determination of whether a violation is "willful", courts look to both the violations toward a named plaintiff, as well as the calling party and/or its principal's practices, more broadly. In *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2242952, 2017 U.S. Dist. LEXIS 77163 (M.D.N.C. May 22, 2017), the Middle District of North Carolina trebled damages upon consideration of both the calls to the plaintiff, Dr. Krakauer, as well as an expert report citing "tens of thousands" of calls to class members on the do-not-call registry a systematic disregard of do-not-call registration. *Id.*, at *26.

The question of willfulness requires a review of a defendant's practices more broadly than those directed to a given plaintiff. That is just another example of where "class" and "merits" discovery cannot be stratified.

### 3. **Analyses into questions of vicarious liability**

Similarly, it is impossible to distinguish "class" from "merits' discovery in the context of TCPA vicarious liability, under the theories of actual authority (sometimes described as common law or traditional agency) and ratification.

Whether actual authority exists between a putative principal and agent turns on whether the purported principal has the ability to direct and control the business activities of the putative agent(s). *Braver v. NorthStar Alarm Servs., LLC*, No. CIV-17-0383-F, 2019 WL 3208651, 2019 U.S. Dist. LEXIS 118080, at *17 (W.D. Okla. July 16, 2019) *citing* Restatement (Third) of Agency §1.01 cmt. f (1). The ability to direct and control inquiry, almost by necessity, turns on the business relationship between the defendant and its vendor(s), well beyond any specific dealings with a named-plaintiff. Accordingly, a "class" or "merits" classification could not reasonably be made, as agency questions almost always address both.

In their brief, Defendants argue SolidQuote prohibits vendors from making outbound calls and only accepting inbound calls. Doc. No. 36, p. 3-4. Accordingly, whether SolidQuote's agent(s)/vendor(s) that placed outbound calls to Klassen were acting subject to SolidQuote's direction and control would be pertinent to Klassen's individual claims as well as the claims of putative class members who received calls from SolidQuote's vendors.

As it relates to the theory of ratification, the Ven diagram between "merits" and "class" discovery is effectively a circle. An example of this inherent overlap can be found in *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079 (9th Cir. Apr. 5, 2022). In *McCurley,* the Ninth Circuit reversed the district court's grant of summary judgment on the vicarious liability theory of ratification, based on review of the over **2 million calls** by the defendant's telemarketing vendor to putative class members. The Ninth Circuit determined the widespread problem of dialed and transferred calls involving un-consenting consumers should have made the defendant cruise company aware of the prevalence of violations and the high percentage of persons called whose names did not match the name listed in the supposed online "opt-in." It was only apparent that the defendant had reason to know of the violations (supposedly

7

a "merits" issue) because of the court's ability to review the findings about the totality of the calls to *all class members* by the marketer (supposedly a "class" issue). In other words, "class" discovery was necessary for the Ninth Circuit to reach its conclusion on a "merits" question.

Here, SolidQuote argues its vendors were not permitted to place outbound calls in connection with the campaign at issue. Doc. No. 36, pp. 3-4. If that is true, the question of whether SolidQuote "ratified" violations may turn on whether it had *reason to know* vendors were making outbound calls to numbers on the do-not-call registry. It would be impossible for that inquiry to take place by looking at the calls to Klassen only. Rather, as was the case in *McCurley*, that question requires a review of the calls made by SolidQuote's vendor(s) (including DMS) throughout the entirety of the subject campaign, or in connection with their contract with SolidQuote. Again, Defendants' specific argument only bolsters the imprudence of bifurcation.

Where a defendant can be vicariously liable where it has reason to know of a violation by a vendor, class discovery inherently overlaps with merits discovery.

### 4. A Plaintiff's statutory standing and adequacy to serve as class representative.

In order to have a cognizable TCPA claim, a plaintiff must have "statutory standing" and demonstrate s/he meets the elements of his/her claim and falls within the "zone of interest" of persons protected by the statute. *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 331 (W.D. Okla. 2018.) Likewise, under Rule 23(a), a class representative must have claims typical of the class s/he seeks to represent. *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 445 (E.D. Mich. 2015) *citing* Fed. R. Civ. P. 23(a).

Discovery that bears on questions of whether a plaintiff/putative class representative has "statutory standing" and is "typical" of the members of the putative class, are effectively one and the same. To split hairs on whether the inquiries are "class" or "merits" based, would be an exercise

8

in futility. The aforementioned issues are just a few examples of instances where "class" discovery and "merits" discovery have inherent overlap and it is all but impossible to classify as one or the other. Inevitably, the Parties will end up in disputes as to whether a given request or question is "class" or "individual." Such disputes necessarily will require needless intervention of the Court and cause an unnecessary waste of judicial resources.

Defendants' briefing in support of their Motion to Bifurcate actually undermines their position. Defendants argue that Ronda Klassen actually placed the call that was transferred to SolidQuote on April 13, 2020 and that there were not two or more calls. Doc. No. 36, p. 4. Klassen's phone records and her testimony reflect that is simply untrue. Her AT&T phone records already produced to the Defendants reflect an incoming call from the number attributed to Defendants. Klassen is confident discovery will reflect Defendants' complete records - and records of any relevant third-parties not yet known- will corroborate her account. However, putting aside the veracity of Defendants' narrative, Defendants make an argument that would be relevant to the question of both her statutory standing (i.e. a "merits" issue) and whether she is a member of the class she seeks to represent (i.e. a "class" issue).

Fortunately, neither the Court nor the Parties need undertake these exercises of arbitrary classification. Rather than attempting to stratify what is "class discovery" from what is "merits discovery", the parties can simply perform discovery.

### C. Bifurcation would cause needless delay antithetical to Rule 1 and Rule 23

Federal Rule of Civil Procedure 1 dictates that each rule should be construed with the goal of "just, speedy, and inexpensive determination of every action." The extraordinary delay that can be caused by phased discovery with lengthy periods of time where discovery is paused for briefing and the court's adjudication is at odds with Rule 1. See *Breines v. Pro Custom Solar LLC*, No.

3:19-cv-353-J-39PDB, 2019 U.S. Dist. LEXIS 223945, at 6. (M.D. Fla. Aug. 22, 2019) (denying motion to bifurcate discovery in TCPA class-action, citing to the goals of Rule 1).

Likewise, Rule 23(a) dictates class certification should be decided at the "earliest practicable time." Fed. R. Civ. P. 23(a). In *Kamrava v. Cenlar Capital Corp.*, No. 2:20-CV-11465-AB (Ex), 2021 U.S. Dist. LEXIS 209314, at *6-7 (C.D. Cal. Oct. 7, 2021), the Central District of California declined to bifurcate discovery in a putative TCPA class-action noting "bifurcating discovery would not promote Rule 23's requirement that certification be decided at an early practicable time." *Id.,* 2021 U.S. Dist. LEXIS 209314, at *6-7. Likewise, in *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 U.S. Dist. LEXIS 7015 (N.D. Cal. Jan. 20, 2015), the court denied a motion to bifurcate, because, *inter alia,* the delays caused by phased discovery with dispositive motion practice between the phases would push class certification back by months if not more, and was antithetical to Rule 23(a)'s requirement class certification be adjudicated at the earliest practicable time. *Id*., at 6.

### D. Bifurcation would cause needless duplication of efforts.

The Manual for Complex Litigation (4th) § 11.213 provides "Discovery may proceed concurrently if bifurcating class discovery from merits discovery would result in significant duplication of effort and expense to the parties."

With a bifurcation of discovery, many routine tasks would have to be redone by virtue of the Defendants' proposed approach. For instance, witnesses would have to be deposed twice- once to discuss issues rendered "merits", and then a second time to answer questions that are rendered to be "class" related. That would also be true for written discovery and even subpoenas. In addition to the virtual impossibility of assigning such a classification to a given question (discussed above), the approach would cause a needless multiplication of efforts from all involved. See Hartley-Culp v. Credit Mgmt. Co, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. Sep. 15, 2014) ("bifurcation

10

of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions.")

In *Salls v. Secura Ins.*, Civil Action No. 18-cv-00370-MSK-GPG, 2019 WL 1228068, 2019 U.S. Dist. LEXIS 43097 (D. Colo. Mar. 16, 2019)2019 U.S. Dist. LEXIS 43097 (D. Colo. Mar. 16, 2019), Judge Gallagher denied a motion for bifurcation of discovery noting such an approach would cause delays, fights over classification of the type of discovery and duplication of efforts:

> there would be unnecessary duplication of effort by bifurcation, particularly with regard to depositions. In terms of paper discovery, what is at issue is the claims handling file, policies and procedures, and likely interrogatories. Effort yes, herculean no. I ultimately conclude that the speculative potential savings of bifurcation are outweighed by costs of delay, and the unnecessary duplication of effort-both by the parties and the Court.

*Salls v. Secura Ins.*, Civil Action No. 18-cv-00370-MSK-GPG, 2019 U.S. Dist. LEXIS 43097, at *7-8 (D. Colo. Mar. 16, 2019).

Other courts around the country have come to the same conclusion on the grounds of inefficiency. See *EQT Prod. Co. v. Terra Servs., LLC*, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. Oct. 21, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.")

There is no reason to make Ronda Klassen or the designee(s) of DMS or SolidQuote sit for two depositions with one limited to "merits" questions and the other devoted to those considered to be "class"-based. When one considers the prospect of asking third-parties to respond to two subpoenas, the proposition becomes all the more absurd. The prospect of the duplication of efforts is another reason to reject bifurcation.

### E. Due to the fleeting nature of many telemarketing and lead generation companies, bifurcation poses a risk of deletion of records.

Any attorney who practices in TCPA litigation knows that telemarketers and lead generators often have short shelf-lives. Illustrative of this phenomenon, approximately two months before the filing of this brief, eighteen of leading health insurance telemarketers filed bankruptcy together in the Southern District of Texas. *See* Ex. A, Ch. 11 Petition for Bankruptcy, *In re: Benefytt Technologies, et al*, 23-90566 (S.D. Tex. Bk. 2023). The fleeting nature of many companies in these industries makes time of the essence as it relates to the gathering of class information.

Telemarketers and lead generators often use vendors and sub-vendors, which are just as prone to dissolve or file bankruptcy, or simply to delete records in the course of business. Litigation hold letters do not necessarily reach downstream vendors removed from litigation. This can create an insurmountable obstacle to class certification. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. *Id*., at 2.

Bifurcating discovery would exacerbate the risk that information and records necessary to certify the class will be inaccessible at the time of certification. Bifurcation could be unduly prejudicial to Plaintiff and the putative class.

///

///

///

///

///

### III. CONCLUSION

For the foregoing reasons, Plaintiff, Ronda Klassen respectfully requests this Honorable Court deny Defendants SolidQuote, LLC and Digital Media Solutions, LLC's Motion to Bifurcate Discovery.

Respectfully submitted,

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman P.C.
30 East Butler Avenue
Ambler, PA 19002
267-468-5374
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*/s/ Ryan Lee McBride*
Ryan Lee McBride, Esq.
Kazerouni Law Group APC
301 East Bethany Home Road Suite C-195
Phoenix, AZ 85012
800-400-6808
Ryan@kazlg.com

Dated: July 24, 2023

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, hereby certify I served the foregoing on all parties of record via ECF on July 24, 2023.

/s/ Jacob U. Ginsburg